Good afternoon, Your Honor, panel. I am Michael Harwin. I represent Bojo Calava, who's present. I'd like to reserve at least 12 minutes of my time for rebuttal. I'm going to ask today that this panel do two things. One, hold that the DIA erred in failing to address the issue as to whether or not my client was an aggravated felon. And second, I'm going to ask that this panel hold that the BIA erred in finding that the provisions of 8 U.S.C. 1227-A4B, the terrorism of provisions that were adopted in 1991, applied retroactively to my client. First, I'm going to take the jurisdiction issue. 8 U.S.C. 1252-A2C provides that it's a jurisdiction stripping provision that provides that there is no jurisdiction in this court over a final order of removal for an aggravated felon. 8 U.S.C. 1101-A47B1 provides that an order is final when the BIA affirms such order. This court has passed on the issue in several cases, Toro and also in a case prior to that, Alvarez-Santos. In Toro, the immigration judge had held inadmissible the respondent for a crime involving moral turpitude and also for false representation of citizenship. Let's assume that we have jurisdiction, counsel. The BIA did affirm on the basis of engagement in terrorist activity, didn't it? Correct. And that's a position where they don't have to prove that there was a conviction, correct? Correct. All they have to prove is that he engaged in terrorist activity? Correct. And is there any dispute but that your client 20 years ago with a friend in an armed takeover of the Chicago Embassy of then-West Germany held hostages for 6, 8, 9 hours and demanded that a friend of theirs not be extradited from West Germany to Yugoslavia? Is there any doubt about that? No. The facts are not in dispute at all. Then why isn't that enough? Well, it's not enough because the terrorism of provisions enacted in 1991 that's codified at 8 U.S.C. 1227A4B do not by their terms, there's no clear congressional intent to apply that new ground for removability using the language of Immigration Act of 1996. There's no clear congressional intent to apply those provisions retroactively. Well, I want to question you about that because it provides that any alien who has engaged in the past tense is engaged in the present tense or at any time after admission engages. So it seems to me that it sweeps about as broadly as it could grammatically to then, now, or later. Why isn't that the natural reading of that section? I don't believe it is the natural reading. The BIA hung their hat on their own decision in matter of chow, interpreting the language any time after entry to indicate a clear congressional intent to give this statute retroactive effect. However, the court in St. Cyr, the U.S. Supreme Court, and I can steer you to the footnote. In footnote, I think it's 43. The court in St. Cyr outlines, limbs, categorizes the places in IRAIRA, the Immigration Reform and Responsibility Act of 1996, codified as Immigration Act of 1996, clearly provided for retroactive effect of these statutes. My position today, strongly and earnestly, is based on a reading of St. Cyr and that footnote, which is a pretty thorough categorization of the retroactive provisions contained in the statute. My reading is that merely the language, any time after admission or any time after entry, does not indicate a clear congressional intent to apply the basis for removability retroactively. Counsel, I have trouble with that at a couple of levels. One is I have trouble reading the words any time after admission to mean anything other than any time before or after this statute is passed. The second is on St. Cyr, although it's discussed in terms of retroactivity, you have to ask retroactivity to what? And St. Cyr is talking about retroactivity to a guilty plea. Basically, St. Cyr is saying, had he known it would result in these immigration consequences that the new act imposes, he might not have pleaded guilty because any criminal defense lawyer and his client will carefully consider the effect of the guilty plea on deportation. So the retroactivity to what is not the conduct in that. It's the guilty plea. Now, in this case, we're not talking about a guilty plea. We're talking about conduct. And we have a case, Armendariz Montoya v. Sanchek, that says St. Cyr doesn't even apply where the person did not plead guilty. And also we have cases from other circuits that are not binding on us, but they seem to square with common sense that it's one thing to say a person wouldn't have pleaded guilty if this new statute had been in effect that would get them deported. It's quite another to say he wouldn't have committed the crime had he known that on top of the draconian criminal penalties, he could have also been deported. So at the end of it, I have trouble seeing why St. Cyr is applicable, and I have trouble reading the statute in any way other than as retroactive to your client's activities at the German consulate. St. Cyr held that the prior provisions under 212C, the provisions in M.A.C. 96 which stripped the ability of the immigrant to apply for 212C did not apply retroactively. For plea purposes. For plea purposes. So isn't Judge Kleinfeld exactly right when he says St. Cyr on its facts is related to the plea? Absolutely. Any doubt about that, Armanderos-Montoya makes perfectly clear that we have restricted it, this Court's restricted it to the plea context. I mean, you're not seriously arguing that if your client had known he would be deported, he wouldn't have entered the embassy or the consulate? Oh, no. No. It's a separate issue as to whether, and I want to stick to the point, but there's a separate issue as to whether or not he would have entered the plea in 1980 after the verdict got thrown out to unarmed imprisonment of foreign national under 18 U.S.C. What does that matter? What does that matter? He's not being ruled ineligible because of that plea. He's being ruled ineligible because of the conduct. Because of the conduct. That doesn't require any conviction. But to get back to the point, I am not suggesting that the specific holding of St. Cyr demands or suggests that the terrorism provision contained in 1227 should not apply unretroactively, but the reasoning applies, and the Lansgrath analysis applies. You're saying we should look at it for guidance in deciding whether the statute sweeps in old conduct? That's all I'm saying. And that St. Cyr is useful in that footnote because it outlines, which footnote again? Footnote 43. 43. But it seems to me that I just have a hard time reading the statute in the light of what Congress was trying to accomplish and also just looking at the words of it to say that if you were engaged in terrorist activity last week, no problem, you can stay. But if you were engaged in terrorist activity tomorrow, we don't want you. I just have difficulty seeing that either in the words of Congress or in the congressional purpose. Let me give you an example. As this Court well knows, much better than I do, there's provisions contained in the 1996 or 1997 that provide that an immigrant is subject to removal if, within five years of entry, they're convicted of a single crime involving moral turpitude. Now, do those provisions provide, do they apply unretroactively? The five years of admission, I believe, could be read in the same way that any time after entry a provision in 1227 applies. It doesn't apply to ñ it doesn't ñ it's relevant to when the act occurs, not to when the provision applies. The retroactivity statutes cited by the Court in St. Cyr in footnote 43 show the distinction between clear congressional language that shows clear congressional intent to apply the amendments to any act occurring before, on or after the effective date of the act, and ambiguous language. But I don't see why it's ambiguous. That's why I was asking you what I did about the three prongs, the three verbs. There's the has engaged, the past. There's the is engaging in the present. And there's the anytime that it may happen. And it seemed to me they were trying to sweep in past, present and future by using those three verb forms. I agree, Judge, that they were trying to sweep in past, present and future conduct just as Congress swept in certain conduct involving crimes of moral turpitude five years after admission or two crimes of moral turpitude any time after admission. What I propose, and what I argue here today earnestly, is that that provision is ambiguous. While it seems to sweep in conduct, conduct that occurred any time after entry, the provision itself, that terrorism of provision dates back to 1991. Prior to that, there was no terrorism of provision of the government. So on the day it became law, the very day, what was the judge to do with the verb has engaged? This is day one. The statute is in effect. It says any person who has engaged in this activity is removable. First day, do we just ignore that? Was that meaningless on the first day the statute was in effect? No. It was not meaningless. What's become important in this immigration, in the realm of immigration arguments and litigation, is whether or not these sweeping provisions contained in the IRA-IRA, the Anti-Effective Death Penalty Act, codified in the Immigration Act of 1996, which ones of these sweeping provisions apply retroactively in this case? And this is a good example. In this case, there's no argument about the facts. My client came here as a refugee in 1969. There's no argument about that. There's no argument that he was an anti-Communist dissident, a strong one. There was no argument about what he did in 1978. Those are the facts. But 20 years later, and by the way, he applied for citizenship several times after his conviction, after his guilty plea. He became a legal permanent resident in 1972. There's no question that he would have been eligible for 212C. Well, but we don't have the opportunity to decide whether Congress did a sensible thing or not a sensible thing in terms of policy when it passed this statute. But I guess what I have difficulty with is on the day that it became law, it said any person who has engaged in this kind of conduct is removable. Why didn't that apply to him on that day? As a person who has engaged. Because Congress didn't unequivocally express a legislative intent to make that new ground for removability apply retroactively to acts that occurred before the effective date of the act. In stark contrast to many other provisions, like those contained in 8 U.S.C. 1101A43, that the aggravated felony provision, the definition applies retroactively, the contrast in language is stark. So I see your point, Judge Graber, and I understand. But my position is that there is no clear congressional intent to make that new ground for deportability. I mean, they didn't deport him up until 1999, and you understand that. He wasn't deportable prior to that. So the question is, was Congress's intent to make that provision apply to acts occurring 20, 30, 40 years ago? And my answer is, my argument to this Court today is, because there wasn't a clear expression of legislative intent, and you're sincere for guidance. That's my argument. That footnote provides clear guidance that it shouldn't be. The reason, St. Sir, that this Court has adopted in several cases, I believe this Court's adopted the language that there is a – that retroactive statutes are to be construed narrowly. Well, the problem with retroactivity is that a person ought to have fair notice of what the law is so he can conduct himself in conformity with it and not be punished for things or suffer civil harms for things that were permissible when he did them. On the civil side, retroactivity under Landgraf can be accomplished, but it requires a clear indication of congressional purpose to make it retroactive. Now, in this case, it seems to me that that purpose of avoiding retroactivity is immaterial. He already had plenty of notice that he wasn't supposed to go into the German consulate and hold people at gunpoint for most of the day. And the chances that knowing that he was deportable if he did, on top of being subject to being sent to prison for it, were – it was relatively trivial. So I don't see why the general policy against retroactivity has any bearing. Well, I've relied on the language of the law and the language of this Court in arguing that because courts narrowly construe, especially in Act 96, on the language of the law argument, I still don't really understand your answer to Judge Graber. When I read those words, has engaged, or at any time after admission engages, it looks to me as though the time that I looked at is admission. If he engages in it at any time after admission, he's deportable. And if he's ever engaged in it, in terrorism, he's deportable. I just don't see how else to read them. And I know Judge Graber asked you the same thing, and I guess I didn't understand your answer. Well, I don't want to go in circles on my answer, and I'm sorry. I don't even see why it's ambiguous. In my reading of it, it is ambiguous. Tell me how to read it to mean something else. Well, it would mean that any time after entry, any time after entry if a person engages in terrorist activity subject to deportation, just as if a person is convicted any time after entry of two crimes involving moral turpitude, that person – Tell me how to read it some other way. Ambiguous means there are two ways you can read it. Absolutely. So tell me the other way. The other way would be this. Clearly, he'd be subject to removal based on acts any time, terrorist acts any time after entry, Judge, but the provisions rendering him removable would not apply retroactively to acts occurring before the effective date of the act. And the reason for that, I mean, the language that's missing, the language that's missing is – You said X is retroactive no matter when it happened, and they didn't do that here. So you're finding ambiguity not really so much in the text but in the context. Yes, Judge. Thank you. It's much more artfully said than I phrased it, but I am finding ambiguity in the congressional intent to apply that new provision, 1991, to render terrorists deportable from the United States to apply it prior to the effective date of the act. That's my argument. Also – and I don't know how to sum up here. The government – Based on your argument, if the first people who bombed the World Trade Center had done it before the passage of this act and the 9-11 hijackers had done it after, one would be subject to the act and the other would not. Correct. Okay. I understand your argument. That's my argument. Thank you, counsel. May – can I just ask a quick question? I'm sorry. Sure. Are you still pro bono with this client? Yes. You're doing this on your own? Yes. Have you applied to be appointed to this court for the purposes of this appeal? No, I haven't. And the reason I ask that is you may not know this if you do that, and I can't guarantee the court will grant it, but if they did, then you can apply to the clerk's office to reimburse your travel expenses. Did you understand that? I didn't, but I will call the court. It's up to you. I appreciate that. Okay. Thank you. Just wanted you to know that. Thank you. Thanks. Counsel? Good afternoon, Your Honor. My name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case also. I'm going to get relative very swiftly to the issues that you've been discussing here with opposing counsel, but before I start that, I want to say one thing, and that is – Oh, you're not going to let us kick you around on jurisdiction? I'm going to open that door, and I'll tell you that you'll have plenty of time to do that when I'm finished. I would love to talk about purely political offenses with this court, since you all have a great deal of experience with that term of art in the extradition context. All of you sat on the Barapin en banc panel that was just decided a couple of months ago, so you have even greater background than I do on that term of art, and that would be useful in that discussion if we ever got to it. I just don't see from the way that the court is headed here that we're going to get there. So let me set that aside for a moment. Now let me address what the court asked us to address with respect to Toro Romero, and that is I recognize the existence of Toro Romero. I recognize the similarities between Toro Romero and the pattern of the case in front of this court. I would ask – I know that Judge Kleinfeld sat on Toro Romero, although he didn't write the decision. The government disagrees with Toro Romero for a number of reasons. It seems to limit the court's jurisdiction in a lot of ways. Well, that's not relevant. I understand that, and I just – I prefaced my comment because my comments are obviously tinged by that. But I would suggest that the court can distinguish Toro Romero because the issues in Toro Romero were associated with removability. The merits issues were associated with whether or not an individual was removable, whereas in this case the fundamental issues raised by Petitioner are all associated with whether or not he's eligible for discretionary relief. That is tied up with that – with the issue that the court is saying that wasn't decided below. I have just a practical question. Do you ever have periodic meetings with the people from the BIA and talk about emerging issues and that sort of thing? We do, Your Honor. Why in the world wouldn't they in this case have simply said the IJ found aggravated felony and participation in terrorist activity, whatever we think about St. Cyr retroactivity. The first one is clearly an aggravated felony. We'll affirm on that ground, too. Why not talk about that or affirm on that ground and save you a trip to San Francisco? In my view, the board has – They just want to see a sexy case come up in front of us or what? The board has moved in a cycle where they're trying to learn lessons from the court and at that point they thought that it would be better not to address an issue rather than to address it. I think they've moved away from that. Particularly – you note that this case was actually decided by the board just days after Toro Romero. So Toro Romero hadn't sorted its way into the board's thinking. How many times I have sat on panels where we get an appeal where the IJ finds removability on two grounds, one of which Congress has told us we have no jurisdiction to review and one of which we have full jurisdiction to review, and the BIA streamlines the case and sends it up here or only addresses the reviewable issue and doesn't say anything about the nonreviewable issue. It sounds to me like that's sort of shooting yourself in the foot deliberately. It is a historical thing that the board has trouble looking forward to anticipate what issues might be raised on judicial review that aren't raised on appeal before it. I mean, the issue of whether or not this court was going to have jurisdiction was not an issue that was raised to it in the appeal. So it has a little trouble focusing on that, and we attempt through our discussions with the board to get them to reach those issues or to not step on them. Okay. Now, having kicked them around a little bit, let me kick you around a little bit. Why didn't you address the merits of St. Cyr retroactivity in your briefs? We had to ask you to do it, didn't we? Yes, Your Honor. That's correct. There is a position. There is a perfectly straight-faced, arguable position on the government's part, sustainable in our case law and the case law of the Supreme Court, on the issue. You didn't even address it. That's correct, Your Honor. The argument was you. That was you, not the BIA, right? That's correct, Your Honor. One of the attorneys in my office did not address the alternative issue. And that is also an issue we learn from this Court at various times as well. I'm through kicking. If we address the alternative issue, sometimes the Court will take jurisdiction over it, even though we don't think they had it to begin with. So those are things that we are continuously learning. This is how we learn. On the issue of the retroactivity of M.A.C. 90, M.A.C. 90 being the Immigration Act of 1990, Judge Kleinfeld, if you don't mean to use that, there is a provision that Judge Graber has discussed is a powerful provision. It's very hard to get around, and it's one that this Court has interpreted similar provisions to before. I would like to point out that M.A.C. 90 also has, and it's mentioned by the Court But the BIA didn't say what I did. No. The BIA cited to the provision I'm about to read to you without quoting it, which is, it's a little peculiar they didn't quote it because it's really powerful. The provision is in Section 602C of M.A.C. 90. And it's labeled Savings Provision, and nobody thinks that's a really very good name for it. But the last sentence of this provision says, except as specifically provided in this section and subsection D, the provisions of such section as amended by this section shall apply to all aliens described in subsection A, thereof, notwithstanding that, and then there's a one, and then there's a two, the facts by reason of which the alien is described in such subsection occurred before the date of enactment of this act. In Section 602C of M.A.C., unlike ARERA, they came out specifically and said, if the actions we're talking about, if the actions that make you a criminal removable under, or a person who is removable under Section 602A of M.A.C., if those So that's the contextual clue that St. Cyr was looking for. That's correct. So you have the combination of the deportability provision in 602A, plus what they're calling a savings clause, I'm not sure why, at 602C, plus it refers to the effective date provision, which says that we're only going to apply this to people who enter proceedings after the date of this act. So the combination add up to the argument that the Court has been referring to, that is, the statute was clearly intended by Congress in order to apply to actions that took place prior. It is clearly applicable in that context, that is, he's deportable in that context, or in this case, removable in that context, and he's not eligible for relief under 212C. And the reason that he's not eligible for relief under 212C is that the grounds of removability specifically tell you what the corollary of inadmissibility is. That is, 212A3 is the correlating grounds of inadmissibility. If you look at 212C, it says certain grounds are not subject to waiver under this clause. 212A3 is one of those grounds that's not subject to waiver under 212C. So given that it's retroactive, there was absolutely no eligibility for discretionary 212C relief as a result of the actions of Congress. The only thing you then have to consider is whether Congress permissibly made that retroactive, and that's the argument that Judge Kleinfeld was referring to. That only applies in a situation where you surrendered something you had a right to in the first place based on your expectation of that relief. His committing a criminal offense is not surrendering something that he had a right to. As the supplemental brief that was submitted at direction of the Court notes, he was also not eligible for 212C relief even in 1980 based on his actions. He would have been found to have violated the security and related eligibility rules. In order to be eligible for 212C relief, you have to be otherwise admissible or otherwise ---- So to rely on that, though, wouldn't we have to remand? Because the agency did not consider that argument. The argument that you're now making that came in your supplemental. No, Your Honor. In the construct the way that the Supreme Court laid it out, the Court can consider whether or not the alien, in order to demonstrate that the case, that he's eligible for 212C relief, has to prove that he's eligible. And if he can't prove to you that he was otherwise eligible, his claim fails. And he simply can't do it. But that's not a proof that starts here. Isn't that an issue that has to be looked at initially at the level of the agency? Well, in all of the 212C cases that have come up that I've seen, usually a district court at this point, because it's beyond the jurisdiction of the Court of Appeals, is looking to determine whether or not the alien can say that I was eligible for 212C. Do I have a prima facie case that I was eligible for 212C? That's what St. Cyr says the alien is required to produce. That is, you have to prove your eligibility in order for me to remand it to the agency. You have to make that prima facie showing. If you can't make that prima facie showing, there's no reason for this Court, even if it had jurisdiction to send it back. If there's nothing further, I'd love to talk about jurisdiction or anything else. I'm good. I don't think any of us have more questions. Thank you, Your Honor. Thank you, counsel. Calava v. Gonzales has submitted the petitioner exhausted their time. So unless my colleagues have questions, I think we're done. Thank you, counsel. Thank you.
judges: Kleinfeld, Hawkins, Graber